IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHAEL E. SORTOR,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

No. 3:12-cv-01093-HZ

OPINION & ORDER

Robyn M. Rebers
ROBYN M. REBERS LLC
PO Box 3530
Wilsonville, OR 97070

    Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Terrye Erin Shea
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900 M/S 221A

1 - OPINION & ORDER

Seattle, WA 98104

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Rachael E. Sortor brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner determined Sortor was not disabled and denied her application for disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSIB") under Titles II and XVI of the Act, respectively. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

      Sortor was born on July 11, 1974, and is considered a "younger individual" (age 18-44) under the Commissioner's regulations. Tr. 193. Her date last insured for DIB was September 30, 2011. Tr. 19, 208, 252, 310. Plaintiff has a high school education, vocational training in phlebotomy, and prior work as an automobile service station attendant and a phlebotomist. Tr. 57, 76, 90, 335.

      On May 12, 2009, Sortor protectively filed for DIB and SSIB, alleging disability beginning on June 10, 2007. Tr. 17. Plaintiff's claims were initially denied on September 9, 2009, and upon reconsideration on December 31, 2009. Id. A hearing was held on March 31, 2011, in Salem, Oregon, before Administrative Law Judge Rudolph M. Murgo. Id. On April 18, 2011, the ALJ found Plaintiff was not disabled. Tr. 30. Plaintiff requested a review of the ALJ's decision, but the Appeals Council issued an order denying Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-2. This appeal followed.

/ / /

2 - OPINION & ORDER

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e).  If so, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 10, 2007.  Tr. 19, Finding 2.  At step two, the ALJ found Plaintiff had the "following severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, GERD, obesity, depression, anxiety disorder, drug and alcohol abuse and borderline personality disorder . . . Id., Finding 3.  At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20, Finding 4.

At step four, the ALJ assessed Plaintiff as having the following RFC:

> [C]laimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift occasionally up to 20 pounds and frequently ten pounds.  She can frequently lift bilaterally, but occasionally lift with either her right or left hand.  She can occasionally push or pull with her upper extremities and she is limited in overhead reaching.  She can stand or walk two out of eight hours.  She must be able to sit and stand as needed.  She can occasionally climb stairs or ramps, but never ladders, ropes or scaffolds.  She can occasionally stoop, kneel, or crouch, but never crawl.  Additionally, she can only perform simple and routine tasks, and can only have occasional contact with coworkers and no contact with the public.

Tr. 22, Finding 5.

4 - OPINION & ORDER

At step five, the ALJ found Plaintiff was not disabled because jobs existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of computer controlled color photograph printer operator, small products assembler, and electronics worker. Tr. 29, Finding 10.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. Howard, 782 F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff makes the following assignments of error: (1) the ALJ erred when he assigned limited weight to the opinion of Jill Spendal, Psy. D., one of Plaintiff's examining psychologists;

5 - OPINION & ORDER

(2) the ALJ erred when assessing her RFC; and (3) the ALJ erred at step three of the sequential analysis when he failed to consider whether Plaintiff met or equaled Listing 12.08.

**I. Spendal's Opinion**

Plaintiff contends the ALJ failed to provide clear and convincing or specific and legitimate reasons when according Spendal's opinion little weight. Reply, p. 4. Plaintiff asserts that the ALJ's reasoning is improper because he relied on her contradictory statements at her March 31, 2011, hearing, which was two years after Spendal evaluated her in 2009. Plaintiff also asserts ALJ erred because Spendal's evaluation is supported by other medical reports in the record. Plaintiff's arguments are unavailing.

The ALJ is required to consider all medical opinion evidence, and is responsible for resolving conflicts and ambiguities in the medical evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted). An ALJ, however, is not required to find a physician's opinion as to a claimant's physical condition or as to the ultimate question of disability conclusive. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 2009. The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. Lester v. Chater, 81 F3d 821, 830 (9th Cir. 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If an ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, an ALJ "must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Valentine, 574 F.3d at 692 (internal quotations omitted).

Here, Spendal performed a mental evaluation of Plaintiff on October 10, 2009, diagnosing her with chronic major depressive disorder, bipolar disorder, and chronic posttraumatic stress disorder ("PTSD"). Tr. 488, 503. Spendal concluded that Plaintiff's "symptoms make it very difficult for [Plaintiff] to be around people" and "also to be alone." Tr. 503. She also concluded that Plaintiff "cannot tolerate group learning or group work environments" and is unable to "work alone if at night because she is especially fearful of being alone after it is dark . . . ." Id. Finally, Spendal concluded that Plaintiff's "mental health symptoms are too severely impacting her functioning to allow her to be competitive in the workplace at this time." Tr. 505.

The ALJ expressly discussed Spendal's October 10, 2009, evaluation. Tr. 27. The ALJ recognized that Spendal had diagnosed Plaintiff with major depressive disorder, severe psychotic features, PTSD, and avoidant, dependant, and paranoid traits. Id. He also recognized that Spendal had assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 50, indicating serious impairment in functioning, and had rated Plaintiff as having average to high average memory functions. Id. In addition, the ALJ acknowledged Spendal's opinion that "the combination of [Plaintiff's] mental impairments would make it very difficult for her to interact with coworkers and employers" and that Plaintiff was not employable. Id. The ALJ, however, gave Spendal's opinions "limited weight[,]" reasoning that they were "without substantial support from the other evidence of record and [were] inconsistent with [Plaintiff's] actual functioning . . . ." Id. As an example, the ALJ found that although Spendal "specifically noted [that] one major barrier to [Plaintiff's] working . . . was her inability to tolerate group settings . . . and . . . [that her] impairments make it very difficult for her to interact appropriately with others[,]" Plaintiff "testified she rides the bus every day, lives in a group setting sharing a

bedroom, and attends regular group AA meetings and church." Id. (internal quotation marks omitted).

      The ALJ's reasons for giving "limited weight" to Spendal's opinions are clear and convincing and are supported by substantial evidence in the record. Plaintiff fails to explain how statements she made approximately two years after Spendal's 2009 evaluation, by itself, makes the ALJ's decision erroneous. In addition, the ALJ expressly considered evidence in the record that contradicted Spendal's opinion. Despite Spendal's opinion that Plaintiff's symptoms made it very difficult to be around people, Plaintiff testified at her March 31, 2011, hearing, that she went to church and Alcoholics Anonymous ("AA") meetings, shopped at places like Safeway and Albertsons, routinely rode the bus, and sat and talked with others at the "co-op" where she lived. Tr. 69, 72, 73, 74. Plaintiff also testified that she had been living at the co-op for "some time", was living with approximately 12 other people, and was sharing a bedroom with at least "two other ladies" at the co-op. Tr. 55-56. Under the circumstances here, I conclude the ALJ did not err when discounting Spendal's opinion by relying on statements Plaintiff made during her March 31, 2011, hearing. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (concluding the ALJ properly discounted doctor's opinion where despite doctor's conclusion that claimant's mental impairments prevented him from working, the "evidence established that [claimant] adequately cope[d] with the social aspects of daily living, continue[d] to maintain some friendships, and manifest[ed] above-average intelligence and other cognitive abilities" and "demonstrated the ability to work independently and be self-motivated by maintaining a one-acre garden and assisting with the restoration of an old house").

/ / /

/ / /

**II. RFC**

Plaintiff asserts the ALJ erred when failing to include limitations related to her PTSD and manipulative limitations related to her fibromyalgia when assessing her RFC. I disagree.

**A. PTSD**

The ALJ concluded that Plaintiff's RFC limited her to only having "occasional contact with coworkers and no contact with the public." Tr. 22. Plaintiff contends her RFC is erroneous because the ALJ failed to acknowledge she even had PTSD and thus failed to address limitations related to her paranoia, irritability, panic attacks, and dependability. Plaintiff maintains that the record shows her PTSD causes her to avoid people and experience panic attacks, nightmares, and intrusive thoughts. She also maintains that she testified she is mentally unstable, is paranoid, and has trouble sleeping. The Commissioner responds that although the ALJ did not expressly find that Plaintiff's PTSD was severe, he found she had a severe anxiety disorder. The Commissioner asserts that because PTSD is a type of anxiety disorder and because the ALJ properly considered Plaintiff's anxiety disorder in light of all the evidence in the record, the ALJ's assessment of her RFC was proper.[1]

A review of the record shows that the ALJ did not err in this instance. To the extent Plaintiff relies on her own statements, the ALJ found them not credible. Tr. 23. Plaintiff does not expressly challenge the ALJ's adverse credibility finding, and a review of the ALJ's adverse credibility finding shows that his determinations are supported by substantial evidence. Accordingly, to the extent Plaintiff relies on her own statements, such reliance is misplaced.

With respect to the medical evidence in the record, none of the evidence on which Plaintiff relies supports the conclusion that the ALJ erred when determining her RFC. Plaintiff

---

[1] In her reply, Plaintiff does not dispute that PTSD is a type of anxiety disorder and simply refers me to her arguments in her opening brief.

points this Court to only two medical opinions diagnosing her with PTSD–one from Spendal dated October 14, 2009, and the other from Joanne Rutland, PMHNP, BC, a nurse practitioner. Tr. 502, 701. As discussed above, the ALJ properly discounted Spendal's opinion. Accordingly, the ALJ properly excluded the functional limitations set forth in Spendal's medical opinions, including those stemming from her PTSD. With regard to Rutland, although she diagnosed Plaintiff with PTSD, her medical notes do not show any functional limitation arising out of PTSD. Tr. 701. For example, Rutland's medical notes conclude Plaintiff showed "[n]o psychomotor abnormalities[,]" Plaintiff's "[a]ffect was congruent[,]" Plaintiff's "[t]houghts [were] organized[,]" Plaintiff had only "[m]ild feelings of paranoia[,]" and although Plaintiff "report[ed] audio and visual hallucinations[,]" there was "[n]o evidence of delusions" or "suicidal or homicidal ideation." Id. Rutland's medical notes do not establish that Plaintiff has any mental functional limitations stemming from her PTSD.

Plaintiff also cites portions of the medical opinions by Angela Newburg, MA, a mental health therapist; Beata Anasz-Kopecka, M.D., an internal medicine doctor; Karen Peters, PMHNP, a nurse practitioner; and Gregory Cole, Ph.D., a licensed psychologist. None of the above medical providers, however, diagnosed Plaintiff with PTSD. Newberg ruled out PTSD on October 1, 2008, and July 13, 2009. Tr. 342, 471. Similarly, Cole and Peters ruled out PTSD on March 3, 2011, and October 23, 2008, respectively. Tr. 511, 757. In her medical notes dated February 5, 2009, Anasz-Kopecka did not even mention PTSD. Tr. 564. Suffice it to say, Newburg, Anasz-Kopecka, Peters, and Cole did not conclude that Plaintiff had any mental functional limitations arising out of PTSD.

Based on the record as a whole, I conclude the ALJ did not err when assessing her RFC insofar as it relates to her PTSD.

**B. Manipulative Limitations**

Plaintiff asserts the ALJ failed to address her manipulative limitations arising out of her fibromyalgia.  Plaintiff asserts that although the ALJ gave great weight to the medical opinion of Raymond Nolan, M.D., he did not include all of the manipulative limitations in Nolan's opinions.  Specifically, Plaintiff contends that although Nolan found she was limited to repetitive motions of her hands and wrists, her RFC only addressed limitations regarding her ability to reach.  Plaintiff maintains that it is unclear as to why the ALJ did not fully adopt Nolan's opinions.

Contrary to Plaintiff's assertions, the ALJ properly discounted the portion of Nolan's opinions concerning Plaintiff's hand and wrist limitations.  Here, Nolan concluded that based on Plaintiff's fibromyalgia, Plaintiff showed "nonspecific arthralgias involving . . . [her] hands and wrists" that "would likely preclude pushing and pulling activity involving [Plaintiff's] upper extremities on anything more than an occasional basis, and would likely preclude repetitive hand and wrist activities."  Tr. 743.  The ALJ cited Nolan's March 7, 2011, medical opinion diagnosing her with "fibromyalgia, right hip pain, left lateral femoral cutaneous nerve syndrome, probably secondary to obesity and history of right Achilles tendinopathy and calcaneal spur."  Tr. 27.  He also cited Nolan's determinations that Plaintiff's "hip pain and right ankle/foot pains limited her ability to stand and walk to two hours in an eight hour day[,]" limited her to sitting for only "six hours in an eight hour day[,]" and limited her to lifting "up to 20 pounds occasionally and ten pounds frequently."  Id.  The ALJ also acknowledged Nolan's conclusion that "[d]ue to [Plaintiff's] fibromyalgia with nonspecific arthralgias in her hands and wrists, he felt she could only occasionally perform pushing and pulling activities with her arms, and never

any repetitive hand and wrist activities" and that Plaintiff "should never crouch or climb ladders or scaffolds, and only occasionally climb stairs or ramps, stoop, kneel or crouch." Id.

Although the ALJ generally accorded Nolan's opinion "great weight", he rejected Nolan's opinions concerning Plaintiff's hand and wrist limitations because "x-rays of [Plaintiff's] hands only revealed minimal osteoarthritis, with no erosive changes" and only "showed normal appearance . . . with no significant osteoarthritis or changes suggestive of inflammatory arthropathy." Tr. 22, 25. The ALJ also declined to adopt Nolan's opinions concerning Plaintiff's wrists and hands as it related to fibromyalgia because "in September 2009, [Plaintiff] was reportedly doing well and was encouraged to intensify her exercise program to daily aerobic exercise. . . .[,] [i]n February 2010 . . . [Plaintiff's] doctor reported [she] was doing very well on her current regimen . . . [, and] in April 2010 . . . [Plaintiff] was examined and noted to ambulate well and move all extremities well." Tr. 25-26. The ALJ also relied on Peter Van Patten, M.D.'s March 2011, medical opinion, which stated that "despite [Plaintiff's] complaints of swelling of her hands, she had no effusions" and that Plaintiff had "normal range of motion of her fingers." Tr. 26. In addition, the ALJ relied on Plaintiff's daily activities, including her ability to shower, prepare meals, do yard work, crochet, paint, clean house, do laundry, and care for her daughter and pets. Id. The ALJ concluded that such activities were inconsistent with Plaintiff's alleged limitations and did not show she was "limited to the extent one would expect, given her complaints of disabling symptoms and limitations" Id. Finally, the ALJ found that Plaintiff's alleged limitations concerning her hands and wrists were inconsistent with the reports of third-party witnesses, who "did not report [Plaintiff] had any physical limitations" and "reveal[ed] [Plaintiff was] quite independent and active." Id.

12 - OPINION & ORDER

The ALJ gave legally sufficient reasons when declining to adopt the limitations of Plaintiff's hands and wrists as set forth in Nolan's medical opinion. In addition, the ALJ's findings are supported by substantial evidence in the record.

In sum, the ALJ accounted for Plaintiff's psychological and physical limitations when assessing her RFC. Accordingly, the ALJ's assessment of Plaintiff's RFC was proper.

### III. Step Three

Plaintiff argues the ALJ erred at step three of the sequential analysis by failing to consider whether she met or equaled Listing 12.08. Plaintiff asserts that when her "symptoms under the A criteria [of Listing 12.08] are combined with [her] marked difficulty in concentration, persistence and pace such as those limitations associated with PTSD or other limitations supported by Dr. Spendal," it is evident she satisfies Listing 12.08. Opening Br., pp. 12-13. Plaintiff's arguments are unavailing.

For a condition to qualify as a listed impairment at step three of the sequential analysis, the claimant must demonstrate that her condition meets "all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original and citation omitted). The ALJ's failure to discuss the combined effects of a claimant's impairments or to compare them to a listing is not in itself reversible error. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); Spencer v. Astrue, No. 3:11-CV-06085-ST, 2012 WL 6569483, at *4 (D. Or. 2012) (concluding the ALJ did not err even where she did not specifically mention a listing at step three); Melendez v. Astrue, No. EDCV 12-452 AGR, 2013 WL 1209617, at *6 (C.D. Cal. 2013) (concluding the ALJ did not err when failing to specifically discuss Listing 14.06, which deals with differentiated and mixed connective tissue disease, because the ALJ "addressed the diagnosis of

undifferentiated and mixed connective tissue disease"). An ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). The claimant must offer a "theory, plausible or otherwise," as to how her impairments combine to equal a listed impairment. See Lewis, 236 F.3d at 514; see also Freeman v. Astrue, Civil No. 3:11-cv-00401-JE, 2012 WL 4829191, at *9 (D. Or. 2012) (where a claimant has not presented the ALJ a plausible theory as to how an impairment equals a listing, the ALJ is not required to provide an extensive discussion of equivalency). "A generalized assertion of functional problems is not enough to establish disability at step three." See Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments.").

Listing 12.08 applies to personality disorders. 20 C.F.R. pt. 404, Subpt. P, App. 1. It provides as follows:

> A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>     A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
>         1. Seclusiveness or autistic thinking; or
>         2. Pathologically inappropriate suspiciousness or hostility; or
>         3. Oddities of thought, perception, speech and behavior; or
>         4. Persistent disturbances of mood or affect; or
>         5. Pathological dependence, passivity, or aggressivity; or
>         6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

>       AND
>           B. Resulting in at least two of the following:
>           1. Marked restriction of activities of daily living; or
>           2. Marked difficulties in maintaining social functioning; or
>           3. Marked difficulties in maintaining concentration, persistence, or pace; or
>           4. Repeated episodes of decompensation, each of extended duration.

Id.

Plaintiff does not offer a plausible theory as to how her combined disorders meet or equal Listing 12.08. As discussed above, the ALJ did not err with respect to Plaintiff's limitations associated with her PTSD and did not err when discounting Spendal's medical opinions. Accordingly, Plaintiff's reliance on limitations arising out of her PTSD and Spendal's opinions is misplaced.

In addition, Plaintiff fails to make any argument or present any evidence showing how she meets the criteria of paragraph B. A claimant must establish "at least two" of the four criteria set forth in paragraph B. Id. Plaintiff does not show that in addition to having marked difficulties in maintaining concentration, persistence, or pace, she also has marked restriction of activities of daily living, marked difficulties in maintaining social functioning, or repeated episodes of decompensation. As such, even if Plaintiff were to establish that she has marked difficulties in maintaining concentration, persistence, or pace–which she does not, she fails to show that she also meets a second criterion under paragraph B. Indeed, a careful review of the record shows that the ALJ specifically found that Plaintiff did not have marked difficulties in maintaining concentration, persistence, or pace; marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or repeated episodes of decompensation. Specifically, the record shows that the ALJ considered whether Plaintiff satisfied Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders),

15 - OPINION & ORDER

which all require that Plaintiff meet the same criteria set forth in paragraph B of Listing 12.08–namely, marked difficulties in maintaining concentration, persistence, or pace; marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or repeated episodes of decompensation.  See id.  In his decision, the ALJ expressly concluded that Plaintiff only had "mild restriction" in activities of daily living, had "moderate difficulties" in social functioning, had "moderate difficulties" in maintaining concentration, persistence, or pace, and did not have a history of repeated episodes of decompensation.  Tr. 21.  The ALJ's findings are supported by substantial evidence, and Plaintiff does not explicitly argue otherwise.

In sum, Plaintiff fails to present a plausible theory as to how her combined disorders meet or equal Listing 12.08 or establish that the ALJ's findings at step three were otherwise improper.  See Lewis, 236 F.3d at 514 (although the ALJ must consider whether the claimant's symptoms equal a listing, a claimant on appeal must do more than draw a court's attention to an ALJ's omission).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this ___ day of _____, 2013.

_____
MARCO A. HERNANDEZ
United States District Judge